1998 ME 148

**James V. JAMES et al,**

v.

**David MacDONALD et al.**

Supreme Judicial Court of Maine.

Argued April 8, 1998.
Decided June 15, 1998.

William H. Welte (orally), Welte & Welte, P.A., Camden, for plaintiffs.

Thomas R. Watson (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

DANA, Justice.

[¶1] David MacDonald and Charlene Blodgett–MacDonald appeal from a judgment entered in the Superior Court (Knox County, *Marsano, J.*) after a jury found them liable to James V. James and Larry Ackley in the amount of $43,108.95 for a tortious interference with an advantageous economic relationship. The MacDonalds contend that the court erred by submitting the tort of interference to the jury without evidence of an existing relationship and erred when it instructed the jury regarding fraud, intimidation, and "intent to interfere." The MacDonalds also contend the damages awarded were unrelated to the evidence presented on the interference claim. We affirm the judgment.

I.

[¶2] The jury would have been warranted in finding the following facts: James and Ackley, doing business under the assumed name "Bottom Feeders," purchased urchins

at the Rockland pier during the 1993–94 urchin season. During that season Bottom Feeders was one of at least seven seafood businesses buying urchins on the pier pursuant to an Urchin Buyers Permit granted by the pier's operators, the MacDonalds.[1] In March 1994, at the close of the season, James and Ackley informed the MacDonalds that they wished to return to the pier the next season. David responded that they would have a space on the pier and that permits would be issued sometime during the summer. James and Ackley spoke to David several times thereafter, and each time David assured them they would be issued a permit after the application process began later that summer. At one point during these discussions, James tendered a check for the permit amount to David, who refused the check and stated that he did not have a contract drawn up and would not accept the check at that time.

[¶ 3] On July 8, 1994, the MacDonalds sent Bottom Feeders a letter that informed them the pier would be limiting the number of buyers to a maximum of four for the 1994–95 season and requested a written response by August 1 if Bottom Feeders was still interested in obtaining an urchin buyer's permit. James responded by visiting the pier on July 12 and telling David that Bottom Feeders was still interested in receiving a permit. He followed up the conversation with a letter dated July 14, 1994, that once again expressed the partners' desire to receive a permit. In his letter, James requested a quick response because of an impending vacation. Charlene wrote back that the permit application would not be mailed until after August 1 as she did not expect to receive the Urchin Buyer Permit Agreement from her attorney until the end of July. When James returned from vacation at the beginning of August and still had not received an application, he became concerned, as the urchin buying season began on August 15. He and Ackley again went to the pier and spoke to David, who assured them they would be getting a permit. David patted Ackley on the back and said, "Don't worry.

We have a space here for you." Despite the MacDonalds' reluctance to enter into a formal agreement with Bottom Feeders, they were in fact accepting application fees and establishing formal agreements with other buyers as early as July 7.

[¶ 4] On August 7 or 8 James and Ackley met with Rockland's town manager to ask for help in determining whether they would indeed have a buyer's permit for the year. The town manager called Charlene while James and Ackley were in her office and was informed by Charlene that Bottom Feeders would not be getting a permit for the upcoming year. James subsequently received a letter from Charlene dated August 9 that stated, "We are unable to offer you an Urchin Buyers Permit for this coming season." The letter stated that the denial was based on space and equipment limitations at the pier and that the pier operators would be in touch if space later became available for the upcoming season. James and Ackley were able to find an alternative location to conduct their business approximately one-quarter mile from the pier and spent the week preceding the opening of the season assembling and constructing the equipment necessary to operate. The parties agree that the alternative location was not as desirable for conducting urchin buying as the Rockland pier.

[¶ 5] James and Ackley filed a four count complaint against the MacDonalds in October 1994. Count I alleged intentional interference with contract; Count II, intentional interference with business expectancies; Count III, defamation; and Count IV, violation of the right of equal access to the pier. At the trial, David admitted telling at least one other person during the 1993–94 season that he was not going to lease space to Bottom Feeders in the future. He also testified that despite the reason for denial provided in their letter, the primary reason for denying Bottom Feeders' permit application was because they did not give accurate counts of their purchases and they did not get along with other buyers. At the close of the plaintiffs' case, the court granted the MacDonalds'

---

1. The MacDonalds operated the pier pursuant to a lease agreement with the pier's owner, the City of Rockland.

motion for judgment as a matter of law with regard to Counts I, III, and IV. With regard to Count II, the court stated:

I think on Count II that there is sufficient information available from which the jury could find that the actions, as they existed, created a pattern in which there was an interference with an advantageous relationship the plaintiff had or would have had with another which caused the plaintiff damages.

The jury returned a verdict in favor of James and Ackley and awarded them $43,108.95, the exact amount testified to by James as to the cost of setting up their alternative buying location plus a percentage of the growth in urchin sales at the Rockland pier for the year in question. The court entered judgment on the verdict, denied the MacDonalds' renewal of their motion for judgment as a matter of law and their motion for a new trial, and this appeal followed.

## II.

[¶ 6] The MacDonalds first argue that the court should not have submitted the interference claim to the jury because there was no evidence of any "existing relationship" at the time of the interference. They contend that an interference with a business relationship claim requires either an existing contract or business relationship and that the plaintiffs had no such relationship or contract because the alleged tortious conduct occurred between urchin buying seasons when the plaintiffs relationships with other buyers and sellers had necessarily ended.

[¶ 7] In *Barnes v. Zappia,* 658 A.2d 1086 (Me.1995), we succinctly stated the elements of the tort at issue in this case. "Interference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *Id.* at 1090. The court instructed the jury by quoting this language except for deleting the references to contract, and the MacDonalds did not object to the instruction. Assuming, without deciding, that an "existing relationship" is required to prevail on a claim of

interference with a prospective economic advantage, as the MacDonalds contend, the record reveals that the plaintiffs presented sufficient evidence of several such relationships. Bottom Feeders had ongoing relationships with urchin divers from whom they bought urchins and with Atlantic Seafood to whom they sold urchins. The MacDonalds' position that these relationships were no longer in existence at the time of the interference because the urchin season was not underway ignores the clear language of *Barnes* where we stated that one could interfere with a "prospective economic advantage" in addition to a valid contract. The MacDonalds' argument fails to account for the seasonal and fairly informal nature of the business of urchin buying and is unavailing.

## III.

[¶ 8] The MacDonalds next argue that James and Ackley failed to sufficiently allege fraud in their complaint pursuant to M.R. Civ. P. 9(b) and that there was no evidence of fraud presented during the trial. Rule 9(b) requires that all averments of fraud must be stated with particularity in a party's complaint. The complaint in this case did not include such details. The MacDonalds failed to raise any objection to the sufficiency of the complaint prior to trial, however, and did not object during the trial to the introduction of evidence demonstrating fraud on their part. Counsel for the MacDonalds made reference to the failure to allege fraud in the complaint when arguing for judgment as a matter of law, but did so only in the context of challenging the plaintiffs' claim that maritime law was somehow applicable to this case. "Having failed to state this objection distinctly at the trial, it is unpreserved." *Larochelle v. Cyr,* 1998 ME 52, ¶ 12, 707 A.2d 799, 802. We therefore review for obvious error. *See Bourette v. Dresser Indus., Inc.,* 481 A.2d 170, 174 (Me. 1984). The plaintiffs' allegation that the MacDonalds interfered with an advantageous relationship clearly put the MacDonalds on notice that fraud likely would be at issue in the case, as the tort requires a showing of fraud or intimidation. *See Barnes,* 658 A.2d at 1090. Furthermore, the jury heard evi-

dence that David repeatedly promised the plaintiffs that they would receive a permit for the 1994–95 urchin buying season while at the same time entering into formal agreements with other buyers, and that in reliance on David's assertions, James and Ackley failed to make alternative arrangements for urchin buying or to challenge the permit process. Such evidence supports a jury finding of fraud.[2]

### IV.

 [¶ 9] The MacDonalds also contend that James and Ackley presented no evidence that they intended to interfere with the prospective economic advantage of Bottom Feeders with any identified third parties. James and Ackley argue that intent is not a required element of the tort of interference, but their contention is against the weight of authority.

> [T]he tort [of interference with a prospective advantage] began with "malice," and it had remained very largely a matter of at least an intent to interfere. Cases have been quite infrequent in which even the claim has been advanced that the defendant through his negligence has prevented the plaintiff from obtaining a prospective pecuniary advantage; and the usual statement is that there can be no cause of action in such a case.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 130, at 1008 (5th ed.1984). Nevertheless, the jury was provided with sufficient evidence to allow it to infer that the MacDonalds intended to interfere with Bottom Feeders' business. The most compelling evidence of the MacDonalds' intent to interfere was their repeated assurances to James and Ackley that they would get a permit while they simultaneously were accepting money for permits from other buyers. Although David testified that he and Charlene "were hoping [Bottom Feeders] would be part of the package" of buyers during the 1994–95 season, the jury reasonably could infer from the MacDonalds' actions that they never intended to issue a

permit to Bottom Feeders and that their repeated assurances to the contrary were meant to disrupt Bottom Feeders' business. Because the plaintiffs presented sufficient circumstantial evidence of intent, the court committed no error by submitting this issue to the jury. *See Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 14, 694 A.2d 924, 927 (a verdict may be based on circumstantial evidence).

### V.

[¶ 10] The MacDonalds argue finally that the court committed error by allowing the jury to decide the issue of damages. They contend that the evidence submitted regarding damages related only to those claims on which they were granted a judgment as a matter of law at the close of the plaintiffs' case and that the damages claimed would account for purchasing all of the urchins that came across the Rockland pier. The MacDonalds mischaracterize the plaintiffs' theory of damages, however. James presented statistical evidence comparing the percent increase in urchin business at the Rockland pier between 1993–94 and 1994–95 with Bottom Feeders' more limited increase at the alternative pier. James presented evidence that the need to relocate so quickly caused them to lose business because the people who were accustomed to doing business with Bottom Feeders from the previous season were unable to find them in the beginning of the new season. Further, plaintiffs presented evidence that when they learned on such short notice that they would not have a place at the Rockland pier, they had to expend time and money to relocate quickly on an adjacent pier. The jury's verdict reflected the specific amount of lost profits described by James as well as the cost of time and materials needed for the expeditious relocation to the adjacent pier.

 [¶ 11] Our review of damage awards is highly deferential. The assessment of damages is within the sole province of the factfinder. *See Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417, 420. "A damage award will be

---

**2.** Because of our determination that a finding of fraud is supported by the evidence, we need not consider whether the court erroneously instruct-ed the jury regarding intimidation, the alternative means of proving interference.

disturbed only when it is plain that there is no rational basis upon which the amount of the award may be supported. A rational basis exists if there is any competent evidence in the record to support it." *Bourette*, 481 A.2d at 174 (citations omitted). Far from being speculative, the evidence presented was highly detailed and based on verifiable historical statistics. The jury was entitled to infer that had the MacDonalds not misled James and Ackley regarding their chances of receiving a buyer's permit virtually up to the starting date of the urchin season, Bottom Feeders would have been able to seek an alternative method for accessing a spot on the pier or obtain a purchasing location equally as attractive to the Rockland pier in time to advertize their new location effectively.

The entry is:

Judgment affirmed.

