1998 ME 199

John NIEDOJADLO

v.

CENTRAL MAINE MOVING & STORAGE CO., et al.

Supreme Judicial Court of Maine.

Argued June 8, 1998.

Decided Aug. 3, 1998.

Charles W. Cox (orally), Jude, Cox & Tardy, Newport, for plaintiff.

Edward W. Gould (orally), James S. Nixon, Gross, Minsky, Mogul & Singal, P.A., Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1]   Central Maine Moving and Storage Co. and Raymond J. Lynch, Jr. (collectively "the Company") appeal from the judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) following a jury verdict in John Niedojadlo's favor on his claims for breach of contract and fraud.  The Company contends, *inter alia*, that the court erred by refusing to sever Niedojadlo's punitive damages claim from his fraud liability claim, and that the trial court erred in its jury instruction on Niedojadlo's contract claim.  We agree that the trial court erred in its instruction to the jury and therefore vacate the judgment.

[¶ 2]   Niedojadlo was employed by Central Maine Moving & Storage Company from 1984 to 1994, transporting household goods for customers of the Company.  Niedojadlo's compensation was based on a percentage of the price charged by the Company for each haul.  Niedojadlo was paid from a running account maintained by the Company.  The Company credited Niedojadlo's account for the amounts he earned for each haul, and debited his account when Niedojadlo requested his compensation.  During the first year of Niedojadlo's employment he received a monthly accounting of the amounts owed him by the Company, but after the first year he stopped receiving such monthly statements.  Although Niedojadlo repeatedly requested copies of the ledger sheets on which his account was recorded, his employer, Raymond Lynch, Jr.[1], informed Niedojadlo each time that the ledgers were unavailable or incomplete.

[¶ 3]   In May, 1993, Lynch instructed an employee of the Company to create a new 1993 ledger for Niedojadlo that did not carry over approximately $10,000 due to Niedojadlo for work he performed in 1992.  This employee followed Lynch's instruction, essentially creating two sets of ledgers for Niedojadlo's account.

[¶ 4]   Niedojadlo finally gained access to his ledger sheets during off-hours and discovered that his 1992 balance had not been carried forward.  He photocopied the ledgers and confronted Lynch who denied any wrongdoing or any amount owed to Niedojadlo.  Niedojadlo brought an action against the Company and Lynch for breach of contract and fraud.  The jury found for Niedojadlo on both counts and awarded $12,000 in compensatory damages and $30,000 in punitive damages.  The trial court denied the

---

1.  Lynch is the owner of the controlling capital stock of Lynco, Inc., of which the Company is a division.

Company's subsequent motions for judgment as a matter of law and/or new trial. This appeal ensued.

## I.

**[¶ 5]** The Company requested that the trial court submit Niedojadlo's punitive damages claim to the jury only if it first rendered an affirmative answer to the question of the Company's fraud. The decision to sever the submission of claims to a jury rests within the discretion of the trial court. "When the determination of any question rests in the judicial discretion of the trial court, the exercise of that discretion cannot be reviewed by an appellate court unless it is made to appear that the decision was clearly wrong or that it was based upon some error in law." *Rioux v. Portland Water Dist.*, 132 Me. 307, 309, 170 A. 63, 64 (1934).

**[¶ 6]** The Company speculates that the jury did not base its verdict on Niedojadlo's fraud claim on the evidence, but rather only reached that verdict in order to assess punitive damages. We presume that the jury follows the trial court's instructions. *See Michaud v. Steckino*, 390 A.2d 524, 536 (Me.1978) ("[i]t must be presumed that the jurors were influenced in their verdict *only* by the law as given to them by the trial justice and the legal evidence presented to them during the course of the trial") (emphasis in original). Because the jury was explicitly instructed in this case that it could reach the issue of punitive damages only if it found that the Company had committed fraud, we find no error or abuse of discretion in the court's decision to submit the fraud liability and punitive damages questions contemporaneously.

## II.

**[¶ 7]** The Company argues that the trial court erroneously instructed the jury that the Company's contract with Niedojadlo imposed an implicit obligation on the Company to act with objective good faith, or more specifically, to act in a commercially reasonable manner.[2] The Company contends that the good faith standard of commercially reasonable behavior by parties to a contract is only applicable to specific types of contracts between merchants as contemplated by the Uniform Commercial Code. We agree.

**[¶ 8]** We review jury instructions in their entirety and will disturb a judgment on the grounds that the jury instructions are in error only if the instructions fail to inform the jury correctly and fairly in all necessary respects of the governing law. *See Phillips v. Eastern Me. Med. Ctr.*, 565 A.2d 306, 308 (Me.1989) (quotations omitted). When a party has made a timely objection pursuant to M.R. Civ. P. 51(b) to the court's jury instructions, an error in the instructions is reversible error only if it results in prejudice. *See Russell v. Accurate Abatement, Inc.*, 1997 ME 98, ¶ 4, 694 A.2d 921, 923. A timely objection to the court's contract instruction was made and preserved by the Company.

**[¶ 9]** Contracts governed by the Maine version of the Uniform Commercial Code are subject to an implied covenant of good faith. *See* 11 M.R.S.A. § 1–203 (1995) ("Every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement."). "Good faith" is defined by statute as "honesty in fact in the conduct or transaction concerned." 11 M.R.S.A. § 2–103 (1995). The U.C.C. also imposes the more onerous duty of objective good faith in certain commercial situations. *See id.* at

2. In its instruction to the jury concerning the applicable law of contracts, the trial court stated:
I do want to tell you that in addition to the explicit terms in an oral contract, there is in every contract under Maine law an implicit requirement that obligates both parties to perform their duties according to the principles of good faith and fair dealing. The plaintiff alleges that the corporate defendant violated this good faith requirement. Good faith requires an honest intention to carry out the obligations imposed by a contract without any ulterior motive and without taking unfair advantage of the other party to the contract.... The good faith inquiry has two parts, an objective part and a subjective part. The subjective part requires you, the jury, to evaluate whether the party had an honest motive to carry out the contract, and the objective part requires you to evaluate the party's conduct in terms of whether or not it was commercially reasonable. Now, that's the law of contracts as it relates—for you to consider.

§§ 2–103, 3–406, 3–419(3) and 9–318(2). "Objective good faith" is defined by statute as conduct that incorporates the "observance of reasonable commercial standards of fair dealing." *Id.* at 2–103.

[¶ 10] The employment agreement between the Company and Niedojadlo does not fall within the class of contracts governed by the U.C.C.'s good faith requirement of commercial reasonableness. We have had the opportunity to extend the implied covenant of objective good faith in contracts not governed by Maine's U.C.C. and we have specifically refused to do so. *See First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me.1992); *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 612 (Me.1992).[3] We decline the invitation to do so today. Because the jury was instructed to assess the Company's conduct against a commercial reasonableness standard to which the Company was not subject, we conclude that the Company was prejudiced by the court's jury instruction relating to Niedojadlo's contract claim.

[¶ 11] The resulting issue is whether the judgment entered in this case may be supported by the jury's verdict on the fraud count alone. The jury verdict form instructed the jury to answer separately the questions of whether the Company breached its contract with Niedojadlo and whether the Company committed fraud on Niedojadlo. An affirmative answer to either question, however, directed the jury to answer the verdict form's question number four, which asked, "What are Plaintiff's compensatory damages?" Question number four did not require the jury to specify separately the compensatory damages it found on the breach of contract count and the compensatory damages it found on the fraud count. We can thus only speculate as to the jury's calculus in arriving at $12,000 in aggregate compensatory damages. Because we cannot distinguish that portion of the jury award attributable to the fraud verdict, we must remand for a new trial on both the contract and fraud counts. We need not reach the Company's other contentions on appeal.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

DANA, Justice, with whom WATHEN, Chief Justice, joins, dissenting.

[¶ 12] I respectfully dissent. Although we have never held that a contract for employment is subject to the good faith requirement of commercially reasonable conduct, the court's instruction on this point was harmless in two respects.

[¶ 13] First, it is inconceivable that the jury could have found CMMS and Lynch liable for fraud and a breach of a duty of good faith, but not liable for a simple breach of the underlying oral employment contract. The gravamen of Niedojadlo's complaint was that Lynch and, in effect, CMMS intentionally altered Niedojadlo's account records in order to prevent Niedojadlo from being fully compensated for work that he had completed for the company. This act of deception, which necessarily formed the basis of the jury's finding on the fraud count, also compels the jury's implied finding that CMMS breached what must be an essential element of the parties' contract, namely, that CMMS would pay Niedojadlo for the work he performed.

[¶ 14] Furthermore, the jury's finding that Lynch and CMMS perpetrated a fraud on Niedojadlo is fully supported by the evidence and provides an independent rational basis for the damage award. "A damage award will be disturbed only when it is plain that there is no rational basis upon which the amount of the award may be supported. A rational basis exists if there is any competent evidence in the record to support it." *James v. MacDonald*, 1998 ME 148, ¶ 11, 712 A.2d 1054 (quotation omitted). Based on the record, the jury rationally could have found that Niedojadlo reasonably relied on CMMS to accurately record the compensation to which

---

**3.** We have held that "in every *insurance contract* an insurer owes a duty to act in good faith and deal fairly with its insured." *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993) (emphasis added). Our decision in *Marquis* concerns the duty of good faith owed by an insurer to its insured and thus has no application to the present case.

he was entitled, and that the company's intentional alteration of the books caused Niedojadlo to suffer damages in the amount of the alteration.

[¶ 15]  I would affirm the judgment entered in the Superior Court.