MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:     2014 ME 101
Docket:       Han-13-485
Argued:       June 10, 2014
Decided:      August 7, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## SANTINA CARUSO

v.

## THE JACKSON LABORATORY

JABAR, J.

[¶1]  Santina Caruso appeals from a judgment entered in the Superior Court (Hancock County, *Cuddy, J.*) after a jury found for The Jackson Laboratory on her claims that the Laboratory had terminated her employment in violation of the Whistleblowers' Protection Act (WPA).  *See* 26 M.R.S. §§ 831, 833(1)(A) (2013). Caruso argues that the court erred by instructing the jury that it could find that Caruso had met her burden of proving causation only if it determined that "the employee's whistleblowing activities . . . made a *substantial* difference in determining whether she was to be retained or terminated."  (Emphasis added.) Additionally, Caruso argues that the court erred in failing to issue a corrective instruction or grant a new trial following a series of purportedly prejudicial statements made by the attorney for the Laboratory during closing arguments.  We affirm the judgment.

## I. BACKGROUND

[¶2]   Viewing the evidence in the light most favorable to The Jackson Laboratory as the prevailing party, a jury could have rationally found the following facts.  *See Garland v. Roy*, 2009 ME 86, ¶ 2, 976 A.2d 940.

[¶3]   The Jackson Laboratory hired Santina Caruso as a veterinary technician to care for animals (primarily mice) used in medical research.  Because the Laboratory and the researchers who work there receive funding from the National Institutes of Health, the Laboratory and researchers are required to comply with regulations and guidelines governing the humane treatment of animals used in medical research.  Caruso began working at the Laboratory on February 25, 2008, with an initial ninety-day probationary period.  Her employment was terminated on June 13, 2008.

[¶4]  During the first months of her employment, Caruso observed what she believed to be numerous violations of the regulations and guidelines governing the ethical treatment of animals, including the Laboratory's clipping of the toes of adult mice, taking blood from mice's eyes without using anesthesia, and failing to euthanize mice that were in terminal condition.  She reported the violations to her supervisors and, eventually, to the Laboratory's in-house veterinarian.  In June of 2008, because she believed that her supervisors at the Laboratory were not addressing the issues adequately, Caruso reported her concerns to the Office of

Laboratory Animal Welfare (OLAW), an oversight authority in the U.S. Department of Health and Human Services National Institutes of Health.[1]

[¶5] During the same time period, Caruso had several confrontations with other Laboratory employees relating to her concerns about the treatment of animals. During these confrontations, Caruso was sarcastic and inappropriate. In addition, she was dismissive of, and demonstrated a total lack of respect for, her direct supervisor, her coworkers, and at least one of the research scientists and his staff.

[¶6] On June 4, 2008, Caruso's supervisors—Claudia Basso, Bonnie Lyons, and Peggy Danneman—met to discuss extending her initial ninety-day probationary period because of Caruso's confrontational manner of communicating with other staff members. Basso gave Caruso a letter on June 9, informing her that due to her "disrespectful [and] uncooperative interactions" with coworkers and "overstepping the boundaries" of her position, she would remain on probationary status. Basso asked Caruso to meet with her, but Caruso repeatedly evaded her attempts to set up a meeting. Caruso ultimately met with Basso, Lyons, and a

---

[1] In July of 2008, after Caruso's employment had already been terminated, OLAW began conducting an investigation into Caruso's allegations, and, in response, the Animal Care and Use Committee at the Laboratory implemented two new internal policies governing euthanasia and animal treatment. Within about six months, OLAW concluded its investigation and determined that with the Laboratory's new policies it "f[ound] no cause for further action." OLAW sent Caruso a letter to inform her that although the investigation "was merited," it concluded that the Laboratory had complied with the relevant regulations and guidelines.

representative from the Laboratory's human resources department on June 13. Caruso attempted to record the meeting, and she refused to discuss either the confrontations with her coworkers or the action plan to continue her probationary period. The following Monday, Caruso's supervisors informed her that they were terminating her employment.

[¶7] Following her termination, Caruso filed a complaint in the Superior Court alleging that the Laboratory had taken retaliatory action against her in violation of the WPA. *See* 26 M.R.S. § 833(1)(A). Five years after the events in question, the court held a jury trial over the course of four days in May and June 2013. At the end of the trial, the court met with counsel for both parties to discuss its instructions to the jury. Caruso objected to the court's instruction that the jury must find that her whistleblowing activities "in fact . . . made a substantial difference in determining whether she was to be retained or terminated," arguing that the standard was whether the whistleblowing activities made *any* difference. The court overruled Caruso's objection.

[¶8] Additionally, during closing arguments, the attorney for the Laboratory stated,

> I presented my, I call them my four gals. I've known them now for three years since this litigation has started so we've grown quite close. So I presented my witnesses. They've come before you. They've testified. You assess what their intent was. I told you when I opened we want you to find the truth. We're not afraid of the truth. Find the

> truth. They told you what they did . . . We've shown you who they are. Not in snippets of little testimony from depositions. They came in person and they told you.

Caruso objected only to the characterization of her evidence as "snippets," arguing that counsel for the Laboratory implied that the deposition testimony that Caruso presented at trial was of lesser weight than live testimony. The court overruled Caruso's objection.

[¶9] Later in his closing argument, counsel for the Laboratory also stated, "I only know one thing. There are four women over there [referring to the Laboratory's witnesses]. There's no evil in them. There's no malice in them. There's no mischief in them." Caruso did not object to this statement.

[¶10] At the conclusion of the trial, the jury rendered a verdict in favor of the Laboratory. Caruso filed a motion for a new trial, arguing that the court erred in instructing the jury on the issue of causation and that counsel for the Laboratory made unduly prejudicial comments during its closing argument. The court denied her motion, and Caruso timely appealed. *See* M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶11] The WPA prohibits the discharge of employees "because . . . [t]he employee, acting in good faith . . . reports . . . to . . . a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State . . . or the United States." 26 M.R.S. § 833(1)(A).

6

"There are three elements to a claim of unlawful retaliation: (1) the employee engaged in activity protected by the statute; (2) the employee was the subject of an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051.

A.    Jury Instructions

[¶12]  Caruso argues that the court erred in instructing the jury on the third element—the causal link between the protected activity of reporting violations to a public body and her termination.  "We review jury instructions in their entirety and will disturb a judgment on the grounds that the jury instructions are in error only if the instructions fail to inform the jury correctly and fairly in all necessary respects of the governing law."  *Niedojadlo v. Cent. Me. Moving & Storage Co.*, 1998 ME 199, ¶ 8, 715 A.2d 934.  Interpretation of a statute is a question of law that we review de novo. *See Costain*, 2008 ME 142, ¶ 5, 954 A.2d 1051.  When a party challenging the court's instruction has preserved his or her objection at trial, we will vacate the court's judgment only if the erroneous instruction resulted in prejudice. *WahlcoMetroflex, Inc. v. Baldwin*, 2010 ME 26, ¶ 14, 991 A.2d 44; *Niedojadlo*, 1998 ME 199, ¶ 8, 715 A.2d 934; *see also* M.R. Civ. P. 51(b).

[¶13]   To demonstrate a causal link, the plaintiff must show that the protected activity (whistleblowing) "was a substantial, even though perhaps not the

only, factor motivating the employee's dismissal." *Walsh v. Town of Millinocket*, 2011 ME 99, ¶ 25, 28 A.3d 610 (quoting *Wells v. Franklin Broad. Corp.*, 403 A.2d 771, 773 (Me. 1979)). We have explained that "the jury must be instructed that even if more than one factor affects the decision to dismiss an employee, the employee may recover if one factor is [unlawful discrimination] and in fact it made *a difference* in determining whether he was to be retained or discharged." *Wells*, 403 A.2d at 773 (emphasis added).

[¶14] Here, the court instructed the jury:

The proper inquiry for you is whether the plaintiff's whistleblower activities were a substantial, even though perhaps not the only, factor motivating her termination. The standard is substantial factor motivating the termination. Plaintiff may recover if one factor was a whistleblowing activit[y], and in fact that made a *substantial* difference in determining whether she was to be retained or terminated.

(Emphasis added.) In restating Caruso's burden of proof with respect to causation, the court added the term "substantial," requiring Caruso to demonstrate not only that her whistleblowing activity "made a difference," *id.*, but that it "made a substantial difference." *Cf. Walsh*, 2011 ME 99, ¶¶ 16-18, 28 A.3d 610; *Wells*, 403 A.2d at 772-75. Thus, we conclude that the court erred in instructing the jury on the element of causation. *See Wells*, 403 A.2d at 772-75 (concluding that the court erred when it instructed the jury that it must find that termination was "'on the basis of age, and nothing but age'" because "the proper inquiry is whether

8

age was a substantial, even though perhaps not the only, factor motivating the employee's dismissal").

[¶15] However, "an error in the instructions is reversible error only if it results in prejudice." *Niedojadlo*, 1998 ME 199, ¶ 8, 715 A.2d 934; *see also* M.R. Civ. P. 61. Prejudice occurs when an erroneous instruction on a particular point of law affects the jury's verdict, *see Kezer v. Cent. Me. Med. Ctr.*, 2012 ME 54, ¶ 25, 40 A.3d 955, or alternatively, when "the instruction was so plainly wrong and the point involved so vital that the verdict must have been based upon a misconception of the law," *Neal v. Bowes*, 159 Me. 162, 168, 189 A.2d 566 (1963) (quotation marks and alterations omitted). We conclude that Caruso has not satisfied her burden of demonstrating that she was prejudiced by the erroneous instruction on either ground.

[¶16] Although the court altered the description of the plaintiff's burden of proof on the element of causation in a WPA case, we review the court's instructions as a whole, *Niedojadlo*, 1998 ME 199, ¶ 8, 715 A.2d 934, and, viewed in that context, the instruction was not "so plainly wrong . . . that the verdict must have been based upon a misconception of the law," *Neal*, 159 Me. at 168, 189 A.2d 566 (quotation marks omitted). "Loose expressions, or simple inaccuracies, in separation from context, will be disregarded when, as a whole, instructions not only contain an entire, fair, and correct statement of the law, but

are free from any misleading influence." *Reed v. Cent. Me. Power Co.*, 132 Me. 476, 480, 172 A. 823 (1934).

[¶17]    Here, the court appropriately instructed the jury that the whistleblowing activities need not be the sole or primary factor motivating the termination. *See Walsh*, 2011 ME 99, ¶ 25, 28 A.3d 610; *Wells*, 403 A.2d at 773. The court also properly instructed the jury that the existence of other reasonable grounds for her termination does not relieve the laboratory from liability. *See Walsh*, 2011 ME 99, ¶ 25, 28 A.3d 610; *Wells*, 403 A.2d at 773. Additionally, the court stated that, for the jury to find for the plaintiff, her protected whistleblowing activity must be a but-for cause of the employer's decision to terminate the employment. *See Walsh*, 2011 ME 99, ¶ 16, 28 A.3d 610. Another way of restating the "but-for causation" test is whether the protected whistleblowing activity is a "*substantial . . .* factor motivating the employee's dismissal." *See Wells*, 403 A.2d at 773-74. Because the court's remaining instructions provided the jury with an accurate summary of the law, we conclude that the insertion of the term "substantial" in the wrong place in the instructions did not lead the jury to base its verdict on a "misconception of the law." *Neal*, 159 Me. at 168, 189 A.2d 566 (quotation marks omitted).

[¶18]    Additionally, Caruso has failed to demonstrate that the court's instruction actually affected the jury's verdict. *See* M.R. Civ. P. 61. In *Kezer v.*

*Central Maine Medical Center*, we noted that, despite the trial court's erroneous instruction on the statute of limitations, the party assigning error to the court's judgment failed to demonstrate that he was prejudiced by the court's instructions. 2012 ME 54, ¶ 25, 40 A.3d 955. Because he "did not request or propose a jury verdict form that separated the statute of limitations issue from the merits of his claims," we concluded that it was possible that the jury's verdict was based on the merits of his claims. *Id.*; *see also* M.R. Civ. P. 49(a). Similarly here, Caruso objected to the court's instruction but failed to request a special verdict form that would have separated the issue of causation into multiple subparts, specifically asking whether the jury found that the protected activity made a substantial difference in the Laboratory's decision to terminate. *See Kezer*, 2012 ME 54, ¶ 25, 40 A.3d 955. Rather, the verdict form presented to the jury in this case contained a question that combined all three elements of a WPA action:

> Did the Plaintiff, Santina Caruso, prove by a preponderance of the evidence that the Defendant, Jackson Laboratory, violated her rights under the Whistleblower Protection Act as described in the instructions the Justice read to you?

Because the jury may have denied Caruso's claims based on a determination that Caruso did not engage in protected activity pursuant to the WPA or on the portion of the court's causation instructions that were proper, we conclude that Caruso has failed to demonstrate that the court's error actually affected the verdict. *See*

*Costain*, 2008 ME 142, ¶ 6, 954 A.2d 1051; *see also McLain v. Training & Dev. Corp.*, 572 A.2d 494, 497-98 (Me. 1990).

B.      Closing Argument

[¶19]  Caruso argues that two statements made by counsel for the Laboratory during closing arguments prejudiced her case: (1) references to his "four gals" who testified on behalf of the Laboratory, which Caruso claims constituted improper vouching for the credibility of his witnesses, and (2) a characterization of the video deposition testimony that Caruso presented as less reliable than live in-court testimony.

        1.      Vouching for Witnesses

[¶20]  "At trial, an attorney is prohibited from commenting on his or her personal opinion as to the credibility of a witness." *State v. Williams*, 2012 ME 63, ¶ 46, 52 A.3d 911.  When an attorney injects a personal opinion as to the credibility of his or her own witnesses or the untruthfulness of the opposing party's witnesses, he or she breaches the Rules of Professional Conduct.  *See* M.R. Prof. Conduct 3.4(e).  As the Court of Appeals of New York summarized in a case involving a similar comment made by a prosecuting attorney on the credibility of a witness,

> Though it would . . . have been perfectly permissible for the [attorney]
> . . . to have concentrated, in argument, on proved facts and
> circumstances and the inferences to be drawn therefrom in order to

support or undermine the credibility of any witness, it was utterly impermissible for him to present himself, as he here in effect did, as an unsworn witness to [the] truthfulness [of the witness].

*New York v. Bailey*, 447 N.E.2d 1273, 1275 (N.Y. 1983). Although a prosecutor's breach of this rule is particularly egregious because "[t]he prosecutor is cloaked with the authority of the State [and] stands before the jury as the community's representative," *State v. Casella*, 632 A.2d 121, 122 (Me. 1993) (quotation marks and alterations omitted), this proscription equally applies to attorneys in civil cases, *see Rich v. Fuller*, 666 A.2d 71, 77 (Me. 1995); *see also* M.R. Prof. Cond. 3.4(e).

[¶21] Caruso failed to preserve her objections to the comments regarding the credibility of witnesses by failing to timely object to them at trial. *See Gilmore v. Cent. Me. Power Co.*, 665 A.2d 666, 669 (Me. 1995). Thus, we review her claims "for obvious error affecting substantial rights." *Id.*; *see also* M.R. Evid. 103(e); Field & Murray, *Maine Evidence* § 103.3 at 11-12 (6th ed. 2007) (describing the need for timely objections at trial).

[¶22] Contrary to the Laboratory's argument that counsel was simply asking the jury to draw a conclusion from the evidence, counsel expressed a personal opinion that the jury should find these witnesses credible based on his purported personal friendship with them. This "vouching" for witnesses by an attorney is neither permitted nor appropriate. However, because the court instructed the jurors that "statements the attorneys make during the course of the trial . . . are not

evidence" and because Caruso's own testimony, other witnesses' testimony, and other evidence including emails and other documents corroborated most of the testimony given by the Laboratory's four witnesses at issue, the prejudicial effect of the attorney's improper vouching was minimized. Taken together, we conclude that the court's failure to take any action to remedy the attorney's improper statement about the witnesses' credibility does not rise to the level of obvious error. *See Gilmore*, 665 A.2d at 669.

### 2. Characterizing the Evidence

[¶23] Finally, Caruso argues that the court erred in overruling her objection to a statement by the Laboratory's attorney characterizing the video deposition testimony that she presented as "snippets of little testimony from depositions," which she argues gave the jury the impression that they should give the deposition testimony less weight than the testimony presented in court. Because Caruso has preserved this claim by timely objecting at trial, we review the court's overruling of her objection for an abuse of discretion. *See Lambert v. Tripp*, 560 A.2d 1097, 1099 (Me. 1989).

[¶24] We agree that it is improper to characterize deposition testimony as inherently less reliable than live, in-court testimony, *see generally* Alexander, *Maine Jury Instruction Manual* §§ 4-16 at 4-39–41 (2014 ed.). "[Improper] remarks, however, do not always require reversal." *Gilmore*, 665 A.2d at 668.

14

"The trial court has discretion to determine both the prejudicial effect of any claimed improper conduct by counsel and what corrective measures should be taken." *Miller v. Szelenyi*, 546 A.2d 1013, 1018 (Me. 1988); *see also Gilmore*, 665 A.2d at 669 ("The trial court who heard the remarks in the context of the entire trial is in the best position to gauge the reaction of the jury to them.").

[¶25]  Here, although Caruso objected to the Laboratory's counsel's characterization of the video deposition as "snippets," the court overruled her objection, determining that the statement did not relate to the validity or weight of the deposition testimony but was an "appropriate argument."  Because the jury need not have inferred, as Caruso does, that the term "snippets" implied that the evidence was inherently less reliable and should be given less weight, we conclude that the court did not abuse its discretion in overruling her objection.  *See Lambert v. Tripp*, 560 A.2d at 1097, 1099 (Me. 1989)

[¶26]  Further, before the video deposition testimony was played, the court appropriately instructed the jury:

> The witnesses that you'll hear by video deposition are just as if they were here live.  You can consider them as if they were witnesses sitting in this chair.  You consider the information and the facts they provide as evidence for you to consider even though they are not physically here.

*See* Alexander, *Maine Jury Instruction Manual* § 4-16 at 4-39.  Thus, even if the characterization of the depositions as "snippets" were regarded as pertinent to the

weight or validity of the evidence, the error is harmless. *See Gilmore*, 665 A.2d at 669-70 (concluding that improper comments by counsel did not require reversal when the court's instructions mitigated the effect of the comments).

The entry is:

Judgment affirmed.

---

**On the briefs:**

David G. Webbert, Esq., and Max R. Katler, Esq., Johnson & Webbert, LLP, Augusta, for appellant Santina Caruso

Thad B. Zmistowski, Esq., and Ryan P. Dumais, Esq., Eaton Peabody, Bangor, for appellee The Jackson Laboratory

**At oral argument:**

David G. Webbert, Esq., for appellant Santina Caruso

Thad B. Zmistowski, Esq., for the appellee The Jackson Laboratory