**STATE of Maine**

v.

**Barney DODD.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1985.

Decided Feb. 5, 1986.

John D. McElwee, (orally), Dist. Atty., Caribou, for plaintiff.

Solman, Page & Hunter, E. Allen Hunter, (orally), Caribou, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ., and WERNICK, A.R.J.

WERNICK, Active Retired Justice.

In a trial without a jury in the Superior Court (Aroostook County), the trial justice found the defendant guilty of having committed the crime of Aggravated Assault, in violation of 17–A M.R.S.A. § 208(1)(C).[1] On appeal, the defendant contends that he should have been acquitted because the evidence was insufficient to prove one, or more, of the following essential elements: (1) that the victim sustained "bodily injury"; (2) that there were "circumstances manifesting extreme indifference to the value of human life"; (3) that the defendant acted "intentionally, knowingly or recklessly" with respect to (a) the occurrence of "bodily injury" as the actual result of his conduct and (b) the existence of "circumstances manifesting extreme indifference to the value of human life."

We reject the defendant's contention and affirm the judgment of conviction.

The trial justice stated expressly that he believed the testimony of one, Tommy, who was the only eyewitness to the events at issue other than the defendant. We may take it, then, that the justice found the following facts.

A three-year old child, the daughter of a friend whom the defendant was dating, was the victim of the defendant's conduct. The defendant worked days, and his friend worked nights. Frequently, the defendant would baby-sit her child. For such occasions, the mother had given the defendant express permission to discipline the child, even to spank her. One evening in April, 1984, the defendant was baby-sitting the child. The child's mother had left the house early to play bingo with a woman friend before going to work. The friend's son, Tommy, then 17 years of age, stayed with the defendant to watch television.

After her mother had left, the child began crying and the defendant spanked her. When, despite the spanking, the child's crying persisted, the defendant told Tommy to find some tape. Tommy found tape and gave it to the defendant who used it to tape the child's ankles together and then her hands. The defendant also covered the child's mouth with two pieces of tape. This

---

1. 17–A M.R.S.A. § 208(1)(C) (1983) provides:

    1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

    ....

       c. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, or the observable physical condition of the victim.

muffled her crying and caused her to struggle. Tommy urged the defendant to quit, but the defendant told him, threateningly, to mind his own business and to say nothing about what was happening. The defendant then hung the child by her ankles from a doorknob for ten minutes or more. Having removed the child from the doorknob, the defendant placed her in a dark closet for an additional 10 to 15 minutes. He then made her stand in a corner for some time until, at last, he put her on a couch. There, still taped, the child fell asleep. A while later, the defendant roused the child from her sleep and again hung her by her taped ankles from the doorknob for at least another ten minutes. During this time, the child was uttering muffled cries and struggling.

### 1.

■ We quickly dispose of the first branch of the defendant's basic contention: that the evidence was insufficient to prove the child had sustained "bodily injury." By definition, there is bodily injury if the victim suffers "physical pain." 17–A M.R. S.A. § 2(5) (1983). The trial justice expressly found, and the evidence adequately supported the finding, that the child had suffered physical pain. The evidence thus sufficiently proved that the defendant had caused bodily injury to the child.[2]

### 2.

Requiring more extended discussion is the question whether the evidence was sufficient to prove beyond a reasonable doubt the particular element the prosecutor relies on to make the defendant's conduct an aggravated, instead of a simple, assault: that the entirety of the circumstances,

viewed objectively, manifested "extreme indifference to the value of human life."

The defendant's argument on this issue has two parts. First, the defendant contests the trial justice's understanding of the correct meaning of the "extreme indifference" element. Noting that the trial justice interpreted it to mean "life-threatening", the defendant argues that the justice thereby ignored the word "extreme." According to the defendant, the word "extreme" requires that his conduct in all the attendant circumstances must create a very high risk of a very serious result, death or serious bodily injury. On this interpretation the defendant argues that the evidence was insufficient to prove that the defendant's conduct in all the circumstances created a very high risk that the child would be killed or suffer serious bodily injury.

■ We reject the defendant's suggested interpretation of the "extreme indifference" element in 17–A M.R.S.A. § 208(1)(C). We interpret it to mean that a defendant's conduct becomes aggravated, for the purposes of assault, where, even though it in fact causes no more than "bodily injury," it creates in all the circumstances a reasonable—not a very high—likelihood of a serious result: death or serious bodily injury. On this as the correct interpretation, we decide that the evidence was sufficient to prove the existence of "circumstances manifesting extreme indifference to the value of human life."

### 2–(a).

In disagreeing with the defendant's interpretation, we recognize that *State v. Joy*, 452 A.2d 408, 410–411 (Me.1982), construed similar language used in the statu-

---

**2.** As an aside from his main contention of insufficiency of the evidence, the defendant claims *in loco parentis* justification for his conduct, by reason of the authorization given him to discipline the child and to spank her if necessary. The argument fails.

The mother's delegated permission would justify the defendant in using "a reasonable degree of force." *See* 17–A M.R.S.A. § 106(1) (1983).

Since this is an objective standard, the defendant's subjective intentions, no matter how innocent, cannot be determinative. Assessing the evidence by the standard of objective reasonableness, the trial justice had ample grounds to conclude that the defendant's conduct went far beyond being a "reasonable degree of force" to discipline.

tory definition of the crime of Murder, [i.e., the phrase "conduct which manifests a depraved indifference to the value of human life," 17–A M.R.S.A. § 201(1)(B) ], to mean conduct "creat[ing] a very high degree of risk of death or serious bodily injury."

There are, however, fundamental differences between murder and assault, whether simple or aggravated. Because of these differences, the similarly worded phrases under discussion serve separate and distinct functions making appropriate separate and distinct meanings.

In the murder statute, the phrase "depraved indifference to the value of human life" identifies conduct which, existing *objectively*, is sufficient *by itself*, without need for the additional existence of any *subjective* culpable state of mind, to make the conduct murder where it causes the death of another human being. By contrast, for the purposes of aggravated assault under § 208(1)(C), the objective existence of "circumstances manifesting extreme indifference to the value of human life" does not *by itself* make conduct that causes "bodily injury" to another person an aggravated assault. There must also exist the subjective culpable state of mind of the defendant's having acted "intentionally, knowingly, or recklessly" with respect to both the result in fact of the conduct and its attendant circumstances. *State v. Goodall*, 407 A.2d 268, 279–80 (Me.1979), clarifies this important difference.

[I]n a prosecution for "depraved indifference" murder the State is not required to prove that the defendant was subjectively indifferent to the value of human life, but rather that his *conduct, objectively viewed* by a reasonable person, "manifest[ed] a depraved indifference to the value of human life." In contrast, the crimes of aggravated assault (§ 208), simple assault (§ 207), and reckless conduct (§ 211) all require the State to prove that the defendant acted, at the very least, "recklessly." As defined in the Code, recklessness involves a "conscious disregard" of a risk. By definition, "conscious disregard" is a *subjective* state of mind. Thus, whereas the inquiry in a prosecution for "depraved indifference" murder is ... an *objective* one and requires no evidence whatever of the defendant's *subjective* state of mind, the other three offenses *do* require an affirmative showing by the State of the defendant's subjective state of mind.

(Emphasis in original; footnote omitted).

In murder, then, under the Criminal Code the *alternative* objective element "depraved indifference" functions, as did "implied malice aforethought" at common law, to provide a degree of culpability as high as that arising where a defendant acts "intentionally or knowingly" to cause the death of another human being. Each alternative yields the serious degree of culpability that attaches to the crime of murder by pointing to the *very high potential* of a defendant's conduct to cause the death that in fact occurs.

Markedly different, however, is the aggravated assault context. First, whereas in murder the result required in fact is always highly serious, the death of another human being, in aggravated assault it may be relatively non-serious, "bodily injury." Section 208(1)(B) & (C). Second, as previously mentioned, unlike murder, aggravated assault requires that a defendant act with a subjective culpable state of mind; a defendant must act "intentionally, knowingly, or recklessly" with respect to a required result [§ 208(1)(A) ], or to both a result and attendant circumstances that are required [§ 208(1)(B) & (C) ]. With these differences in mind, we turn to the analysis of § 208(1)(C), the particular aspect of aggravated assault of which the defendant was convicted.

The requirement that the defendant act "intentionally, knowingly, or recklessly" is enough *by itself* to create a high degree of risk that the defendant's conduct will cause the result required to occur in fact: bodily injury. It would therefore be redundant to interpret the objective "extreme indifference" element, in its function of aggravat-

ing culpability, as requiring what is already provided by the requirement that a defendant act with a subjective culpable state of mind: a high likelihood that a defendant's conduct might cause the non-serious bodily injury it in fact caused. Instead, the objective "extreme indifference" element will meaningfully and sufficiently operate as a factor aggravating the actual occurrence of bodily injury that is not serious if it is interpreted to require a *serious impairment to life as a value*—death or a serious bodily injury—that, not having occurred in fact, was nevertheless *reasonably likely* to result from a defendant's conduct in all the circumstances surrounding it.

Close examination of the internal relationships established by § 208(1) confirms the soundness of this approach. Section 208(1)(A) addresses aggravation precisely in terms of the seriousness of the result in fact of the defendant's conduct: "serious bodily injury." Section 208(1)(B) identifies aggravation not on the basis of the actual result of the defendant's conduct, "bodily injury", but rather in terms of the seriousness of the result that the defendant's conduct could cause by reason of the "use of a dangerous weapon." As defined in the Criminal Code, "use of a dangerous weapon" is a use "capable of producing death or serious bodily injury", 17–A M.R.S.A. § 2(9)(A) (1983). That there is a "capability" for serious bodily injury or death to be produced signifies the reasonable likelihood of such a result. Section 208(1)(C) completes this structural pattern. As under § 208(1)(B), so under § 208(1)(C), the required result in fact is relatively not serious as such, "bodily injury." The aggravating element that § 208(1)(C) sets out is a more comprehensive identification of the same objective reality that § 208(1)(B) identifies by its particularized reference to "use of a dangerous weapon": the reasonable likelihood of serious bodily injury or death.

The Maine Criminal Law Revision Commission noted precisely this dichotomy in the provisions of § 208 making an assault aggravated rather than simple. In its report to the legislature the Commission stated that either of two elements aggravates an assault: (1) "the seriousness of the *harm caused*" [§ 208(1)(A)] (emphasis added), or (2) "the *risks* to life that are *posed* by the defendant's conduct [§ 208(1)(B) (specific) and § 208(1)(C) (general)]" (emphasis added). L.D. 314, Statement of Fact (Comment) § 207–08 (107th Legis.1975).

We decide, therefore, that what constitutes the aggravating element set out in § 208(1)(C), "circumstances manifesting extreme indifference to the value of human life," is the *grave result*, serious bodily injury or death, that the defendant's conduct in all the circumstances surrounding it makes *reasonably likely*. We reject, as erroneous, the defendant's contention that there must also be, beyond such a reasonable likelihood, a very high probability of the dire result.

### 2–(b).

With the correct interpretation of "under circumstances manifesting extreme indifference to the value of human life" thus established, we have little difficulty deciding that the evidence was sufficient to prove that element. The trial justice found that what the defendant did was "life-threatening" to his child victim. The evidence was adequate to support that finding of fact, which includes implicitly a determination that serious bodily injury was also threatened.

### 3.

Remaining for consideration is the defendant's last claim of evidence insufficiency: that the evidence failed to prove that the defendant had acted with the required subjective culpable state of mind. More particularly, the issue is whether the evidence was sufficient to warrant a fact-finding conclusion beyond a reasonable doubt that the defendant had acted either "intentionally, knowingly, or recklessly" (a) with respect to the occurrence of "bodily injury" as the actual result of his conduct, and (b) in view of what we have already decided, with respect to serious bodily injury or

death as a reasonably likely result of his conduct in all the circumstances.

We need not be concerned with "intentional" or "knowing" conduct by the defendant, since it is legally sufficient if he acted at least "recklessly." The subjective components of a defendant's acting recklessly are set out in 17–A M.R.S.A. § 35(3)(A) & (B) (1983). Under the further clarification given in *State v. Goodall, supra*, these subjective components would exist in this case if the defendant was found to have been subjectively aware, and to have acted in disregard, of a "risk" that (1) "bodily injury" would result, and (2) serious bodily injury or death probably might result. We conclude that the evidence was sufficient to allow the fact-finder to resolve each of these matters.[3]

Yet, there is a further problem. The record reveals that the trial justice, acting as the fact-finder, made specific reference to the existence of a culpable state of mind only by finding, negatively, that the defendant had no "intention" to harm the child. The justice did not find, affirmatively, that the defendant had nevertheless acted at least "recklessly."

In our view, what thus appears of record fails to show that the trial justice acted in the erroneous belief that the existence of a culpable state of mind is not an essential element of aggravated assault under § 208(1)(C). This being so, since the defendant failed to request additional special findings of fact in accordance with M.R. Crim.P. 23(c), we deem the trial justice to have made such findings of fact as are supported by the evidence and that are necessary to sustain his ultimate conclusion finding the defendant guilty of having violated § 208(1)(C). *State v. Garland*, 445 A.2d 1021 (Me.1982).

We have held the evidence sufficient to support a finding of fact that the defendant acted "recklessly", within the definition set

out in 17–A M.R.S.A. § 35, in the respects requisite in the present circumstances. We therefore deem the trial justice implicitly to have made that finding of fact in order to reach his ultimate determination that the defendant was guilty as charged.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Section 35(3)(C) adds an objective component to acting "recklessly": that the conscious disregard of risk "must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." On the evidence in this case the factfinder could rationally find such a gross deviation.