MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:    2017 ME 223
Docket:      Yor-17-100
Argued:      October 13, 2017
Decided:     December 7, 2017

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

STATE OF MAINE

v.

DUBOIS LIVESTOCK, INC., et al.

GORMAN, J.

[¶1]   Dubois Livestock, Inc., and the Randrick Trust appeal from a judgment of the Superior Court (York County, *O'Neil, J.*) granting the Department of Environmental Protection's request for a permanent injunction prohibiting Dubois and the Trust from denying the Department access for solid waste inspections.  Dubois and the Trust argue that (1) the court erred in concluding that 38 M.R.S. §§ 347-C and 1304(4-A) (2016) permit the Department to enter the property without consent or an administrative search warrant and (2) if the statutes do permit warrantless searches, the statutory scheme violates their constitutional right to be free from unreasonable searches and seizures.  We affirm the judgment.

## I. BACKGROUND

[¶2]  Dubois operates a composting business in Arundel on land owned by the Randrick Trust and surrounded by fields the Trust also owns.  Dubois conducts its composting operation out in the open on large uncovered impervious pads, far from any buildings or residences.  In 1999, the Department issued a solid waste order granting Dubois an "after-the-fact license" to receive 1,733 tons of fish waste and 3,467 tons of horse manure annually.  *See Dubois Livestock, Inc. v. Town of Arundel*, 2014 ME 122, ¶ 2, 103 A.3d 556.  In 2012, Dubois requested and the Department granted a license amendment that allows Dubois to receive up to 29,000 total tons of composting materials annually, consisting of 8,000 tons of solid waste residuals, including fish and shellfish waste, and 21,000 tons of additional material, such as horse manure, cow manure, horse bedding, and woodchips. *See id.*  The license amendment represented a fivefold increase in the volume of composting material that Dubois could accept each year.

[¶3]  Pursuant to its license and the rules promulgated pursuant to the Maine Hazardous Waste, Septage and Solid Waste Management Act (Solid Waste Act), 38 M.R.S. §§ 1301 to 1319-Y (2016), Dubois is required to "prevent nuisance odors at occupied buildings."  2 C.M.R. 06 096 410-5

§ (4)(E)(1) (2015).[1]  During the spring of 2015, on at least one occasion, Dubois spread compost material on the Trust's surrounding fields.  Soon after, the Department received multiple complaints about odors believed to be emanating from Dubois's premises and the Trust's fields.  In response to these complaints, the Department sought access to Dubois's premises to conduct inspections and access to the Trust's fields to inspect and take samples of the material spread by Dubois.  Dubois initially permitted the Department to enter the property, but after additional odor complaints and follow-up by the

---

[1]  The version of chapter 410 section 4(E) on the Secretary of State's website contains language different from the version in the published Code of Maine Rules, even though the most recent amendments to chapter 410 were enacted before the official publication of section 4(E) in June of 2015.  *Compare* 06-096 C.M.R. ch. 410, § 4(E) (2015), *with* 2 C.M.R. 06 096 410-5 § 4(E) (2015).  The version on the Secretary of State's website includes language from amendments enacted in 2014.  *Compare* 06-096 C.M.R. ch. 410, § 4(E) (2015), *with* 2 C.M.R. 06 096 410-6 § 4(E) (2014).  The version of section 4(E) in the published Code of Maine Rules, however, contains the same language as the version of the rule in effect before the 2014 amendments.  *Compare* 2 C.M.R. 06 096 410-5 § 4(E) (2015), *with* 2 C.M.R. 06 096 410-5 § 4(E) (2010).  It appears that the Department of Environmental Protection "inadvertently" proceeded through the rulemaking process with superseded language from chapter 410 and only realized the mistake after the amendments were adopted and filed with the Secretary of State in April of 2015.  E-mail from Emily K. Green, Assistant Att'y Gen., Office of the Me. Att'y Gen., to Don Wismer, A.P.A. Coordinator, Me. Dept. of the Sec'y of State (May 22, 2015, 11:16 EST) (on file with the Secretary of State in rule adoption log 06-096, 2015-070, and identified as the "corrected filing").  After realizing the error, the Department requested that the Secretary of State's office accept a corrected filing that reinserted multiple pages of the 2014 language into the newly amended rule.  *Id.*  The Department, however, did not go back through the rulemaking process regarding the 2015 amendments.  The Secretary of State's office accepted the Department's corrected filing in May of 2015, but these "corrections" to section 4(E) are not included in the published version of the Code of Maine Rules.  While this series of events may affect other enforcement actions, it does not affect our analysis in this case because the language requiring Dubois to "prevent nuisance odors at occupied buildings" is identical in each version of the rule.  *See* 06-096 C.M.R. ch. 410, § 4(E)(1)(a) (2015); 2 C.M.R. 06 096 410-5 § 4(E)(1) (2015).

Department in the fall of 2015, representatives of Dubois and the Trust denied the Department access.

[¶4]   In response, on November 23, 2015, the Department filed a complaint against Dubois and the Trust in the Superior Court seeking a declaratory judgment that the Department has the right, pursuant to 38 M.R.S. §§ 347-C and 1304(4-A), to enter Dubois's business premises and the surrounding fields to inspect and take samples, and seeking a permanent injunction prohibiting Dubois and the Trust from denying the Department such access.  *See* 38 M.R.S. § 348(1) (2016).  The Department also sought a preliminary injunction to the same effect.

[¶5]  After a contested hearing, the court issued a declaratory judgment stating that the Department has statutory authority "to enter property to inspect and ensure compliance," and that "[n]either consent nor an administrative warrant is required by the statutory scheme."  The court granted the Department a permanent injunction prohibiting Dubois and the Trust from denying the Department such access during "reasonable hours," and affirmed the constitutionality of the statutory scheme as applied to Dubois and the Trust.  Dubois and the Trust appeal.

## II. DISCUSSION

[¶6]   This case requires us to determine, for the first time, the parameters of the Department's right to enter and inspect property, pursuant to 38 M.R.S. §§ 347-C and 1304(4-A), to ensure compliance with the solid waste laws and the rules that the Department administers in enforcing those laws.  Our standard for interpreting statutory provisions is well established:

> In interpreting these provisions, we first look to the plain language of the provisions to determine their meaning.  If the language is unambiguous, we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd.  If the plain language of a statute is ambiguous—that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent.

*MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 (citations omitted) (quotation marks omitted).  "In applying these principles, we examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language.  We reject interpretations that render some language mere surplusage." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 (citations omitted) (quotation marks omitted).  We review the court's "legal conclusions, including the interpretation of the relevant statutory provisions, de novo." *MaineToday Media, Inc.*, 2013 ME 100, ¶ 7, 82 A.3d 104.

6

[¶7] The language in 38 M.R.S. § 347-C that gave the Department a "[r]ight of inspection and entry" stated:[2]

> Employees and agents of the Department of Environmental Protection may enter any property at reasonable hours and enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant, in order to inspect the property or structure, including the premises of an industrial user of a publicly owned treatment works, and to take samples, inspect records relevant to any regulated activity or conduct tests as appropriate to determine compliance with any laws administered by the department or the terms and conditions of any order, regulation, license, permit, approval or decision of the commissioner or of the board.

Dubois and the Trust contend that this language requires the Department to obtain consent or an administrative search warrant to enter "any property" as

---

[2] In June of 2017, the Legislature enacted P.L. 2017, ch. 137, § A-5 (effective November 1, 2017) that repealed and replaced the version of section 347-C applicable in this case. As amended it states:

Employees and agents of the department may:

> **1. Property.** Enter any property at reasonable hours in order to inspect the property to take samples, inspect records relevant to any regulated activity or conduct tests as appropriate to determine compliance with any laws administered by the department or the terms and conditions of any order, regulation, license, permit, approval or decision of the commissioner or of the board; and

> **2. Buildings.** Enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant, in order to inspect the property or structure, including the premises of an industrial user of a publicly owned treatment works, and to take samples, inspect records relevant to any regulated activity or conduct tests as appropriate to determine compliance with any laws administered by the department or the terms and conditions of any order, regulation, license, permit, approval or decision of the commissioner or of the board.

well as "any building." The plain language of section 347-C is unambiguous, however, and compels a different reading than that asserted by Dubois and the Trust. *See Dickau*, 2014 ME 158, ¶ 17, 107 A.3d 621.

[¶8] The Legislature included both "any property" and the more specific type of property, "any building," in the statute. 38 M.R.S. § 347-C. The use of the word "and" in the phrase "enter any property at reasonable hours *and* enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant" serves to distinguish the restrictions that modify the Department's right to enter "any property" from the restrictions that modify the Department's right to enter "any building." 38 M.R.S. § 347-C (emphasis added). Reading this provision as applying the same restrictions to "any property" as applied to "any building" would render the words "any building" mere surplusage, contrary to the principle that "we must give meaning to this language." *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 20, 896 A.2d 271; *see Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶¶ 14-15, 68 A.3d 1262 ("[W]e cannot interpret the statute in a way that would render the word 'all' mere surplusage."). Contrary to Dubois's and the Trust's contentions, pursuant to the plain language of section 347-C, consent or an administrative search

8

warrant is necessary *only* when the Department seeks entry into "any building."

[¶9]    In this case, after receiving numerous odor complaints, the Department sought entry to Dubois's premises and the surrounding fields to determine whether Dubois was complying with its license and the Solid Waste Act.  *See* 2 C.M.R. 06 096 410-5 § (4)(E)(1) (2015).  The Department has an even broader right of entry pursuant to the Solid Waste Act:

> **4-A.  Right of Entry.**  For the purposes of enforcing any provision of this Act or of developing or enforcing any rule authorized by this Act, any duly authorized representative or employee of the department may, upon presentation of appropriate credentials, at any reasonable time:
>
> **A.**  Enter any establishment or other place which is not a residence, or any conveyance, where or in which hazardous or solid waste, sludge or septage is generated, handled or transported.
>
> . . . .

38 M.R.S. § 1304(4-A).  The plain language of section 1304(4-A) grants the Department a right of entry to any portion of the Dubois business premises and the Trust's fields that "is not a residence."  The Department sought access only to Dubois's unenclosed composting premises and the Trust's fields, not to any residences.  After considering the plain language and "the whole [solid waste] statutory scheme," *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360

(Me. 1994) (quotation marks omitted), we hold that the court correctly concluded that pursuant to 38 M.R.S. §§ 347-C and 1304(4-A), the Department does not need consent or an administrative search warrant to enter and inspect Dubois's business premises or the Trust's surrounding fields, provided that it does so at a reasonable time and for the purpose of determining compliance with Dubois's license or the laws that the Department administers.

[¶10]  We are also not persuaded by Dubois's and the Trust's argument that the warrantless searches authorized by these statutes violate their constitutional right to be free from unreasonable searches and seizures.[3] U.S. Const. amend. IV; Me. Const. art. I, § 5; *see State v. Patterson*, 2005 ME 26, ¶ 10, 868 A.2d 188.

[¶11]  It is well established that the Fourth Amendment applies only when there is a "legitimate expectation of privacy in the invaded place." *State v. Boyington*, 1998 ME 163, ¶ 6, 714 A.2d 141 (quotation marks omitted).  "An individual may not legitimately demand privacy for activities conducted out of doors in fields, except in [the curtilage,] the area immediately surrounding the

---

[3]  To the extent that Dubois and the Trust argue that 38 M.R.S. §§ 347-C and 1304(4-A) (2016) do not apply to them or the property that the Department seeks to inspect because compost is not "solid waste," these arguments are unpersuasive and we do not address them further.

home." *State v. Cayer*, 617 A.2d 208, 209-10 (Me. 1992) (quotation marks omitted). Areas beyond the curtilage, known as "open fields," do not implicate the Fourth Amendment, even in the context of regulatory searches and inspections. *State v. Pelletier*, 673 A.2d 1327, 1329 (Me. 1996); *see Dep't of Envtl. Prot. v. Emerson*, 616 A.2d 1268, 1271 (Me. 1992) ("The area [that the Department searched] covered with tires and demolition debris constituted an open field in which defendant could not reasonably expect privacy.").

[¶12] The court found, and Dubois and the Trust do not dispute, that Dubois conducts its composting operation outside on large impervious pads and the Trust's property that the Department seeks to inspect consists entirely of fields; both areas are far from any enclosed structures, buildings, residences, or anything resembling a curtilage. Therefore, Dubois and the Trust "cannot claim a constitutionally protected reasonable expectation of privacy in the[se] area[s]" and the Fourth Amendment simply does not apply. *Cayer*, 617 A.2d at 210 (quotation marks omitted); *see Emerson*, 616 A.2d at 1271.

The entry is:

Judgment affirmed.

Alan E. Shepard, Esq. (orally), Shepard & Read, Kennebunk, for appellants Dubois Livestock, Inc., and the Randrick Trust

Janet T. Mills, Attorney General, and Katherine E. Tierney, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

York County Superior Court docket number CV-2015-262
FOR CLERK REFERENCE ONLY