MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 11
Docket:       Sag-19-176
Argued:       January 8, 2020
Decided:      January 28, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.

STATE OF MAINE

v.

AHMED M. ASAAD

GORMAN, J.

[¶1]  Ahmed M. Asaad appeals from a judgment of conviction of gross sexual assault, 17-A M.R.S. § 253(2)(M) (2018),[1] entered by the court (Sagadahoc County, *Billings, J.*) after a jury-waived trial.  Asaad argues that the evidence was insufficient to support the trial court's finding that he possessed the requisite *mens rea*.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The trial court made the following findings of fact, which are supported by competent record evidence.  *State v. Fournier*, 2019 ME 28, ¶ 2, 203 A.3d 801.

---

[1]  Title 17-A M.R.S. § 253(2)(M) has recently been amended, though not in any way that affects this appeal.  *See* P.L. 2019, ch. 438, § 2 (effective Sept. 19, 2019).

[¶3]    Asaad and the victim met through an online dating site.   On November 29, 2017, Asaad went to the victim's house and eventually they began to engage in consensual sexual activity.  When Asaad "inserted his penis inside of [the victim]," she asked him to stop; despite the victim "saying no and stop on several occasions," Asaad "continued to penetrate her until he ejaculated."

[¶4]  On April 11, 2018, Asaad was indicted on one count of gross sexual assault, 17-A M.R.S. § 253(2)(M).  He pleaded not guilty and waived his right to a jury trial.  *See* M.R.U. Crim. P. 23(a).

[¶5]  After a two-day jury-waived trial, the court found Asaad guilty.  On May 9, 2019, the court entered a judgment of conviction and sentenced Asaad to three years in prison, with all but nine months suspended.  Asaad timely appealed.  *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶6]  Asaad's argument boils down to two assertions: first, that despite the lack of any expressed *mens rea*, 17-A M.R.S. § 253(2)(M) must be read to require proof that the charged individual *knew* that the person with whom he was engaging in a sexual act "ha[d] not expressly or impliedly acquiesced to the sexual act"; and, second, that the evidence presented at trial was insufficient to

support a finding that he knew that the victim had not "expressly or impliedly acquiesced" to the sexual activity. 17-A M.R.S. § 253(2)(M). We address those assertions in reverse order.

A.    Sufficiency of the Evidence

[¶7]  For purposes of this appeal only, while recognizing that section 253(2)(M) does not expressly provide a *mens rea*, we will assume that knowledge is the required *mens rea* and directly address Asaad's argument that the evidence was insufficient to support a finding that he acted knowingly.

[¶8]  "When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged."  *State v. Dorweiler*, 2016 ME 73, ¶ 6, 143 A.3d 114 (quotation marks omitted).  The fact-finder may "draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses."  *State v. McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012 (quotation marks omitted).

[¶9]  The finding that a defendant possessed the requisite *mens rea* need not be proved by direct evidence; rather, the fact-finder "may look to the act itself, the attendant circumstances, and any other evidence tending to prove the

4

defendant's mental state," *State v. Graham*, 2015 ME 35, ¶ 28, 113 A.3d 1102, from which evidence, again, "all reasonable inferences" may be drawn, *McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012.

[¶10] "A person acts knowingly with respect to attendant circumstances when the person is aware that such circumstances exist." 17-A M.R.S. § 35(2)(B) (2018). Here, there was ample evidence to support a finding, beyond a reasonable doubt, that Asaad was "aware" that the victim had not "expressly or impliedly acquiesced" to unprotected vaginal intercourse. *Id.* §§ 35(2)(B), 253(2)(M). The victim, whom the trial court found credible, testified that over the weeks preceding their date, she had repeatedly told Asaad that if they had sex, they "had to use condoms." She also testified that on the night of the assault, as she and Asaad were beginning to engage in sexual activity, she asked if he had brought a condom; the victim stated that, in response to her question, Asaad "did the thing like people do when they go out to dinner and they intentionally leave behind their wallet," saying that he had forgotten to bring condoms and acting disappointed. The victim testified that after learning that Asaad had not brought a condom, she "rolled over and looked at [her] phone."

[¶11] It would be reasonable to infer from this testimony alone that, even before he arrived at the victim's home, Asaad was "aware" that the victim was not willing to engage in unprotected vaginal intercourse. 17-A M.R.S. § 35(2)(B). In fact, we are hard-pressed to imagine a way in which the victim could have made it clearer to Asaad that she was not willing to engage in vaginal intercourse without a condom. Unprotected sex may carry risks for all participants, and it hardly need be said that the consequences of unprotected vaginal intercourse can be vastly different for a woman than for a man.

[¶12] Even without that testimony, however, the court's determination that Asaad engaged in unprotected vaginal intercourse with the victim after she said "stop" was fully supported by the evidence. The victim testified that as she was lying on her stomach looking at her phone after Asaad acknowledged that he did not have a condom, Asaad "turned [the victim] over"—quickly enough that she "dropped [her] phone"—got on top of her, and "inserted his penis inside of [her]." The victim, who is considerably smaller than Asaad, began hitting and slapping Asaad's back, repeatedly saying "no" and "stop," but he continued to "thrust" for at least a few minutes until he ejaculated. Although Asaad claimed that he stopped when the victim told him to stop, the trial court explicitly rejected Asaad's testimony on this point.

6

[¶13]  In sum, the evidence was more than sufficient to support a finding that Asaad engaged in a sexual act that he knew the victim had not "expressly or impliedly acquiesced" to.  17-A M.R.S. § 253(2)(M).  We therefore affirm the conviction.[2]

B.     *Mens rea* for 17-A M.R.S. § 253(2)(M)

[¶14]  Because we conclude that the evidence was sufficient to support a verdict to the *mens rea* standard for which Asaad argues, we do not answer the question of precisely what state of mind section 253(2)(M) requires: criminal negligence, recklessness, or knowledge.  *See* 17-A M.R.S. § 35 (2018).  We do, however, reject the State's contention that section 253(2)(M) is a strict liability statute; the statute's plain language precludes such an interpretation.  *See* 17-A M.R.S. § 34(1), (4) (2018).  A conviction pursuant to section 253(2)(M) requires that the victim "has not expressly or impliedly acquiesced" to the sexual act,

---

[2]  Asaad also argues that the trial court's failure to expressly state a finding as to *mens rea* invalidates the verdict.  In support of his contention, Asaad relies on our cases holding that the failure to instruct a jury properly "on an essential element of the offense" constitutes error.  *State v. Hider*, 649 A.2d 14, 16 (Me. 1994).  Unlike with juries, we assume that judges know and apply the correct law, and nothing in the record suggests that the trial court erroneously believed 17-A M.R.S. § 253(2)(M) to be a strict liability crime.  As indicated in its verdict, the court specifically noted that it believed Asaad's testimony that he heard the victim say "stop"; what the court did not believe was that Asaad stopped as soon as he heard that.  Furthermore, M.R.U. Crim. P. 23(c) provides that "[i]n a case tried before the court without a jury, the court shall make a general finding and shall in addition on request find the facts specially."  Because Asaad did not make such a request, we simply review the sufficiency of the evidence to support the verdict.  *See State v. Dodd*, 503 A.2d 1302, 1306-07 (Me. 1986).

which means that the lack of acquiescence must be communicated in some fashion, verbally or otherwise. *See Acquiesce*, Black's Law Dictionary (11th ed. 2019) ("to give implied consent to [an act]"). After all, expression and implication both involve a "target"—another person who heard, saw, or felt the expression or implication. The State's strict liability interpretation, which would foreclose any inquiry into whether the defendant actually received (let alone understood) the victim's communication, ignores the plain language of the statute.

[¶15] Nevertheless, we do not here resolve the question of whether a defendant is liable pursuant to section 253(2)(M) only if he *actually* understands the victim's communication (that is, to the standard of "knowingly") or if, instead, he misunderstands the victim's communication but his misunderstanding is reckless or criminally negligent.[3] *See* 17-A M.R.S. § 35. In this complicated and nuanced area of human behavior in which norms—and, nationally, legal standards—are varied and rapidly changing, courts must look

---

[3] In this case, the trial court specifically noted Asaad's testimony that he heard the victim say "stop." The court also noted that Asaad claimed he *had* "stopped" as soon as he heard that command. Asaad's testimony that he stopped when she asked him to do so shows his knowledge that the victim was not acquiescing to vaginal intercourse. The court's judgment is based on that admitted knowledge.

to the Legislature for broad-based policy judgments. *See, e.g.*, Aya Gruber, *Consent Confusion*, 38 Cardozo L. Rev. 415, 419, 425-30 (2016).

[¶16] Thus, we emphasize that, because we recognize that this issue should be addressed by the Legislature, we are not here determining the *mens rea* requirement for 17-A M.R.S. § 253(2)(M). There is a substantial difference between imposing felony liability when a defendant knowingly violates a victim's desire not to have sex and imposing that liability when a defendant recklessly or criminally negligently misunderstands that a victim does not consent. Given the significance of this distinction, in this important and unsettled area of law the standard of behavior should be determined by the people's elected representatives.

The entry is:

Judgment affirmed.

---

Lawrence C. Winger, Esq. (orally), Portland, for appellant Ahmed M. Asaad

Natasha C. Irving, District Attorney, Michael B. Dumas, Asst. Dist. Atty., and Alvah J. Chalifour, Jr., Asst. Dist. Atty. (orally), Prosecutorial District VI, Bath, for appellee State of Maine

Sagadahoc Unified Criminal Docket docket number CR-2018-340
FOR CLERK REFERENCE ONLY