MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2025 ME 17
Docket:       And-24-105
Argued:       December 11, 2024
Decided:      February 20, 2025

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## KULMIYE IDRIS

MEAD, J.

[¶1]  Kulmiye Idris appeals from a judgment of conviction of gross sexual assault (Class B), 17-A M.R.S. § 253(2)(D) (2024), entered by the trial court (Androscoggin County, *Stewart, J.*) after a jury trial.  Idris argues that the trial court erred by inaccurately instructing the jury on the *mens rea* requirement of subsection 253(2)(D), and that the court's error resulted in substantial injustice.  We affirm the judgment.  We additionally call upon the Legislature to establish the requisite *mens rea* for all offenses defined by section 253.

### I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to its verdict, the jury rationally could have found the following facts.  *See State v. Fay*, 2015 ME 160, ¶ 2, 130 A.3d 364.

2

[¶3]  Idris and the victim were "close friends" but had no prior romantic or sexual relationship.  On the night of April 2, 2022, Idris and the victim attended a party at a friend's house.  The victim consumed approximately twelve drinks during the evening.  Around midnight, the victim went upstairs to bed at her friend's house.  Later that night, she woke up to Idris engaging in vaginal intercourse with her.  She put her arm up and told him to stop,[1] but he did not stop until "he was done."

[¶4]  The next morning, the victim texted Idris, asking, "Why would you try to have sex when you knew I was half asleep[,] still half fucked up in Lana's bed?"  Idris responded via text several hours later: "I don't even remember.  I'm so sorry," and "[I] have no words for last night except [I'm] sorry."  Minutes after sending those texts, Idris followed up on Facebook Messenger, stating in a long message that he was sorry and adding, "Even being blackout drunk that[']s never an excuse."

[¶5]  Later that day, the victim went to the local police department and reported the sexual assault.  She then went to a medical center where medical personnel examined her and conducted a sexual assault forensic examination.

---

[1]  The victim was unsure whether she said "stop" or "no," but testified that she used negative language.

Analysis conducted by the Maine State Crime Laboratory of the forensic exam showed the presence of sperm cells and DNA matching Idris's DNA.

[¶6]  On April 14, 2022, the Androscoggin County Grand Jury indicted Idris on one count of gross sexual assault (Class B), 17-A M.R.S. § 253(2)(D). Idris entered a plea of not guilty.  After a two-day trial on February 12 and 13, 2024, the jury returned a verdict of guilty.  On February 26, 2024, the court entered judgment and sentenced Idris to eight years' imprisonment, with all but four years suspended, and four years of probation.  Idris timely appealed. *See* M.R. App. P. 2B(b)(1); 15 M.R.S. § 2115 (2024).

## II.  DISCUSSION

### A.    The trial court did not prejudice Idris by instructing the jury using a *mens rea* of "recklessly."

[¶7]  Title 17-A M.R.S. § 253(2)(D) provides, "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person is unconscious or otherwise physically incapable of resisting and has not consented to the sexual act." Subsection 253(2)(D) clearly provides an *actus reus* but lacks an explicit *mens rea*.  *See id.*  The trial court, drawing from our decision in *State v. Asaad*, 2020 ME 11, 224 A.3d 596, instructed the jury to determine whether Idris acted "recklessly" in determining whether the victim consented.  *See* 17-A M.R.S. § 35(3) (2024).

4

Idris argues that subsection 253(2)(D) must be read to require proof beyond a reasonable doubt that the charged individual "knowingly" engaged in a sexual act with a person that had not consented, *see id.* § 35(2), and, therefore, the trial court's jury instruction was erroneously prejudicial.  We disagree.

### 1.  *Mens Rea* Requirement

[¶8]  "We review questions of statutory interpretation de novo, and when interpreting a statute, look first to the plain meaning of the statutory language to give effect to legislative intent."  *State v. Christen*, 2009 ME 78, ¶ 12, 976 A.2d 980 (quotation marks omitted).  "If the language is unambiguous, we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd.  If the plain language of a statute is ambiguous— that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent.  In applying these principles, we examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language."  *State v. Dubois Livestock, Inc.*, 2017 ME 223, ¶ 6, 174 A.3d 308 (citations and quotation marks omitted).

[¶9]  In *Asaad*, 2020 ME 11, ¶ 14, 224 A.3d 596, we construed a different subsection of the statute defining gross sexual assault, 17-A M.R.S. § 253(2)(M)

(2018), as requiring a *mens rea* element.[2]   A conviction under subsection 253(2)(M) required that the victim had "not expressly or impliedly acquiesced" to the sexual act.  *Id.*  We rejected the contention that subsection 253(2)(M) was a strict liability crime, reasoning (a) that the "lack of acquiescence must be communicated in some fashion, verbally or otherwise" and (b) that the defendant must have received the victim's communication because express and implied acquiescence "both involve a 'target'—another person who heard, saw, or felt the expression or implication."  *Asaad*, 2020 ME 11, ¶ 14, 224 A.3d 596.  We concluded that the evidence was sufficient to support a verdict applying the *mens rea* for which Asaad argued ("knowingly"), but we did not identify the *mens rea* that subsection 253(2)(M) requires: knowingly, recklessly, or criminal negligence.  *Id.* ¶¶ 10-13, 15; *see* 17-A M.R.S. § 35.

[¶10]   Here, 17-A M.R.S. § 253(2)(D) (2024) sets out three explicit elements: (1) the defendant must engage in a sexual act; (2) the other person must be unconscious or otherwise physically incapable of resisting; and (3) the other person must not have consented to the sexual act.  Like the acquiescence language at issue in *Asaad*, the consent language in subsection 253(2)(D)

---

[2]   Title 17-A M.R.S. § 35 (2024) explicitly defines five culpable states of mind: "Intentionally," "Knowingly," "Recklessly," "Criminal negligence," and "Culpable."

6

requires (a) that the victim communicate their lack of consent—verbally or by physical cues that the victim is unconscious or physically incapable of resisting—and (b) that the defendant receive that communication. Lack of consent, like a lack of acquiescence, is a communication that requires another person to hear, see, or feel the communication. Accordingly, the lack of consent element requires some level of *mens rea*.[3] *See* 17-A M.R.S. § 35.

[¶11] The plain language of subsection 253(2)(D) does not specify what level of *mens rea* is required. Accordingly, we turn to other interpretative tools to discern legislative intent. *See Dubois Livestock*, 2017 ME 223, ¶ 6, 174 A.3d 308. The statutory history of subsection 253(2)(M) following the *Asaad* decision provides the clearest indication of the *mens rea* that the Legislature intended to apply to subsection 253(2)(D). In a direct response to *Asaad*, the Legislature amended subsection 253(2)(M) to require a *mens rea* of criminal negligence with regard to whether the other person acquiesced to a sexual act.[4]

---

[3] On appeal, Idris contends that the *mens rea* requirement applies not only to the consent element but also the element concerning whether the person is unconscious or otherwise physically incapable of resisting. However, the statute's plain language precludes such an interpretation. Unconsciousness is an element of the crime that the State must prove beyond a reasonable doubt. It is a factual requirement that does not directly concern the defendant's conduct or mental state. Accordingly, the *mens rea* requirement applies only to the lack of consent element.

[4] Following the amendment to subsection 253(2)(M) in 2022, the Legislature again amended the subsection in 2023, replacing the language "expressly or impliedly acquiesced" with "consented." P.L. 2023, ch. 280, § 2 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 253(2)(M) (2024)). The subsection now reads, "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person has not consented to the sexual act and the actor is

P.L. 2021, ch. 608, § E-1 (effective Aug. 8, 2022) (codified at 17-A M.R.S. § 253(2)(M) (2023)); L.D. 1903, Summary (130th Legis. 2022); *see also* L.D. 1903, § E-1 (130th Legis. 2022) (initially proposing a *mens rea* of knowingly); Comm. Amend. A to L.D. 1903, No. H-892 (130th Legis. 2022) (changing the *mens rea* requirement from knowingly to criminal negligence).

[¶12]  Although we communicated in *Asaad* the need for the Legislature to specify the *mens rea* requirement for offenses within section 253, *see* 2020 ME 11, ¶ 15, 224 A.3d 596 ("In this complicated and nuanced area of human behavior in which norms—and nationally, legal standards—are varied and rapidly changing, courts must look to the Legislature for broad-based policy judgments."), the Legislature amended only subsection 253(2)(M), leaving the courts and parties uncertain of the *mens rea* requirements for other subsections within section 253.

[¶13]  Nonetheless, because subsection 253(2)(D) contains consent language that is nearly identical to the most updated version of subsection 253(2)(M), *see supra* n.4, we infer that the Legislature intended a

---

criminally negligent with regard to whether the other person has consented.  Violation of this paragraph is a Class C crime."  17-A M.R.S. § 253(2)(M) (2024).

8

*mens rea* of criminal negligence for the crime at issue in this case.[5] We emphasize that if the Legislature decides as a matter of public policy[6] that a different standard is appropriate for subsection 253(2)(D), it can, and presumably would, impose that standard by statutory amendment.

## 2. Prejudicial Error

[¶14] "[W]e review jury instructions in their entirety to determine whether they presented the relevant issues to the jury fairly, accurately, and adequately, and we will vacate the court's judgment only if the erroneous instruction resulted in prejudice." *State v. Hansley*, 2019 ME 35, ¶ 8, 203 A.3d 827 (quotation marks omitted). "Prejudice occurs when an erroneous instruction on a particular point of law affects the jury's verdict." *Caruso v. Jackson Lab'y*, 2014 ME 101, ¶ 15, 98 A.3d 221.

---

[5] Idris contends that subsection 253(2)(D) requires a higher level of *mens rea* than subsection 253(2)(M) because subsection 253(2)(D) is a Class B crime whereas subsection 253(2)(M) is a Class C crime. We disagree. We are satisfied that the fact that subsection 253(2)(D) is a Class B crime simply reflects the Legislature's policy decision that having unconsented sex with someone that is unconscious or physically incapable of resisting is a uniquely egregious crime, not that the Legislature intended a higher *mens rea* requirement for the consent element.

Furthermore, the "knowingly" standard Idris endorses would allow a person to escape liability for committing a nonconsensual sexual act unless the State proved that the person knew to a practical certainty that the victim had not consented. That cannot have been the Legislature's intent. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621.

[6] We note again that matters of public policy are properly addressed by the Legislature, not the courts. *See Asaad*, 2020 ME 11, ¶ 16, 224 A.3d 596.

[¶15]  "The finding that a defendant possessed the requisite *mens rea* need not be proved by direct evidence; rather, the fact-finder may look to the act itself, the attendant circumstances, and any other evidence tending to prove the defendant's mental state from which evidence, again, all reasonable inferences may be drawn."  *Asaad*, 2020 ME 11, ¶ 9, 224 A.3d 596 (quotation marks and citations omitted).

[¶16]  "A person acts with criminal negligence with respect to attendant circumstances when the person *fails to be aware of a risk* that such circumstances exist."  17-A M.R.S. § 35(4)(B) (emphasis added).  "A person acts recklessly with respect to attendant circumstances when the person *consciously disregards a risk* that such circumstances exist."  *Id.* § 35(3)(B) (emphasis added).  Although both standards involve "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation," *id.* § 35(3)(C), (4)(C), the "consciously disregards a risk" language, *id.* § 35(3)(B), positions recklessly as a more rigorous standard for the State to prove than criminal negligence, where the State must prove that the defendant merely "fail[ed] to be aware of a risk," *id.* § 35(4)(B).[7]

---

[7]  Title 17-A M.R.S. § 34(3) (2024) recognizes that recklessly is a more rigorous *mens rea* standard than criminal negligence, stating that "[w]hen the law provides that negligence is sufficient to

10

[¶17]  Here, the trial court instructed the jury that the State must prove beyond a reasonable doubt that Idris acted recklessly in regard to whether the victim had consented.  The trial court needed to have instructed the jury only that the State must prove beyond a reasonable doubt that Idris *failed to be aware* of the risk of having nonconsensual sex.  The jury found beyond a reasonable doubt that the State had met its burden under a higher standard of proof than the one that we endorse today, and therefore, the jury necessarily found the requisite *mens rea* element.  *See* 17-A M.R.S. § 34(3) (2024).

[¶18]  There is sufficient evidence to support the jury's verdict beyond a reasonable doubt that Idris failed to be aware that the victim had not consented to sex.  The victim testified that she woke to Idris having vaginal intercourse with her.  She used language to communicate that she did not want the sexual act to continue, but he did not stop.  The next morning, Idris texted and Facebook messaged the victim, expressing to her, "[I] have no words for last night except [I'm] sorry" and "Even being blackout drunk that[']s never an excuse."  The victim's testimony and these messages support the inference that Idris failed to be aware of the risk that he was engaging in nonconsensual sex

establish an element of a crime, that element is also established if, with respect thereto, a person acted intentionally, knowingly or recklessly."

with the victim. Because there is sufficient evidence to support the jury's verdict under the lower criminal negligence standard, the erroneous instruction did not affect the jury's verdict, and thus, no prejudice occurred. *See Caruso*, 2014 ME 101, ¶ 15, 98 A.3d 221.

### III. CONCLUSION

[¶19]  Although no prejudicial error occurred here,[8] we emphasize that the standards of behavior in this important and unsettled area of law should be determined by the people's elected representatives. We pointed out in *Asaad* that "[t]here is a substantial difference between imposing felony liability when a defendant knowingly violates a victim's desire not to have sex and imposing liability when a defendant recklessly or criminally negligently misunderstands that a victim does not consent." 2020 ME 11, ¶ 16, 224 A.3d 596. Considering the significance of these distinctions, we entreat the Legislature to clarify the requisite men rea standards in section 253.

The entry is:

> Judgment affirmed.

---

[8] Idris's other arguments concerning whether the trial court obviously erred in admitting medical records or in failing to declare a mistrial as a result of the prosecutor's statements during closing arguments are unpersuasive, and we do not address them further.

Timothy E. Zerillo, Esq. (orally), and Damian A. Ramsdell, Esq., Zerillo Law Firm, LLC, Portland, for appellant Kulmiye Idris

Neil E. McLean Jr., District Attorney, Katherine E. Bozeman, Dep. Dist. Atty. (orally), and Katherine M. Hudson-MacRae, Asst. Dist. Atty., Prosecutorial District III, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2022-846
FOR CLERK REFERENCE ONLY