MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2026 ME 52
Docket:        Han 25-333
Argued:        April 8, 2026
Decided:       June 2, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

## STATE OF MAINE

v.

## JESSE R. PELLETIER

TAUB, J.

[¶1]  Jesse Pelletier appeals from a judgment of conviction for gross sexual assault (Class C), 17-A M.R.S. § 253(2)(M) (2022), and unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(B) (2022),[1] entered in the trial court (Hancock County, *Stewart, A.R.J.*) after a jury-waived trial.[2]  Pelletier contends that the court erred when it permitted a witness to testify as to statements the witness heard the victim make to Pelletier.  Perceiving no error, we affirm the judgment.

---

[1] Because both statutes have since been amended, we cite to the statutes in effect when the crimes were committed.  *See* P.L. 2021 ch. 608, §§ E-1, E-3 (effective Aug. 8, 2022); P.L. 2023 ch. 280, §§ 2, 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. §§ 253(2)(M), 255-A(1)(B) (2026)).

[2] Pelletier was also charged with gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2022), and unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(P) (2022).  The trial court found him not guilty on these two charges because it concluded that the State did not prove beyond a reasonable doubt that the victim submitted to the sexual act and sexual contact as a result of compulsion.

## I. BACKGROUND

[¶2]   The trial court made the following findings of fact, which are supported by competent record evidence.  *See State v. Marquis*, 2023 ME 16, ¶ 2, 290 A.3d 96.

[¶3]  In March 2022, Pelletier and the victim attended a party at the home of a mutual friend.  Sometime after midnight, after most of the guests had left the party, the friend was in her bedroom while Pelletier and the victim were alone in the adjacent living room.  Both Pelletier and the victim intended to spend the night at the friend's house—the victim on the couch and Pelletier on the floor.

[¶4]  While the victim was lying on the couch, Pelletier rose from the floor where he had been sitting, got on top of the victim, and began kissing her.  The victim told Pelletier several times to stop and told him that she had a boyfriend.  Pelletier continued kissing the victim, and the victim told him, "Stop, I don't want this."  Pelletier pulled up the victim's shirt and bra and put his mouth on her breasts.  He lowered the victim's pants and underwear and penetrated her vagina with his fingers.  Pelletier then inserted his penis into the victim's vagina and subsequently put his mouth on the victim's genitals.

[¶5]  Eventually, the victim was able to get away from Pelletier and went into the friend's bedroom.  When she could not wake the friend, the victim returned to the living room to search the couch for her car keys.  While she was searching, Pelletier approached her from behind, pulled down her pants, and tried to insert his penis into her vagina.  The victim tightly squeezed her legs together and told Pelletier to stop.  Unable to penetrate the victim's vagina, Pelletier stopped and left the house.

[¶6]  At the time of the incident, an element of the crimes of which Pelletier was convicted was that the victim had not "expressly or impliedly acquiesced" to the sexual act or sexual contact,[3] and another element was that the defendant was criminally negligent with respect to whether the victim acquiesced.[4]  17-A M.R.S. §§ 253(2)(M), 255-A(1)(B) (2022).  Pelletier did not dispute that he and the victim engaged in sexual acts.  He testified, though, that

---

[3]  The statutes were later amended to replace the language "expressly or impliedly acquiesced" with "consented."  *See* P.L. 2023 ch. 280, §§ 2, 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. §§ 253, 255-A(1)(B) (2026)).

[4]  At the time of the incident, the statutes defining these offenses did not expressly include a mens rea standard with respect to the defendant's awareness of whether the victim acquiesced.  Relying on *State v. Asaad*, 2020 ME 11, 224 A.3d 596, and *State v. Idris*, 2025 ME 17, 331 A.3d 419, the trial court concluded that the State had to prove beyond a reasonable doubt that Pelletier was criminally negligent as to whether the victim acquiesced.  The trial court found that Pelletier's mens rea "clearly exceed[ed] criminal negligence" and that he acted knowingly or intentionally.  The two statutes were amended after the commission of the offense to expressly include a criminal negligence mens rea requirement.  *See* P.L. 2021, ch. 608, §§ E-1, E-3 (effective Aug. 8, 2022) (codified at 17-A M.R.S. §§ 253(2)(M), 255-A(1)(B) (2026)).

4

the acts were consensual and that the victim never told him "no" or otherwise objected to the sexual conduct.

[¶7]  The trial court found that the victim had not acquiesced and that Pelletier was criminally negligent as to whether she had acquiesced.  Among the evidence the court cited in support of this finding was the friend's testimony.  The friend testified that while she was in her bedroom and the victim and Pelletier were in the living room, she heard the victim tell Pelletier three times, "I have a boyfriend, no, nothing's happening."  The court found that this corroborated the victim's testimony that she had told Pelletier that she had a boyfriend, told him several times to stop, and told him that she did not "want this."

[¶8]  Finding that the State proved beyond a reasonable doubt all the necessary elements, the trial court convicted Pelletier of both gross sexual assault and unlawful sexual contact.  The court sentenced Pelletier to three years' imprisonment, with all but nine months and one day suspended, and two years of probation.  Pelletier timely appealed the judgment.  *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

**A.** **The victim's statements to which the friend testified were not hearsay.**

[¶9]  Pelletier argues that the trial court erred when it admitted, over his hearsay objection, the friend's testimony regarding what she heard the victim say to Pelletier.  We review for an abuse of discretion a trial court's decision to admit evidence over a hearsay objection.  *State v. Watson*, 2016 ME 176, ¶ 10, 152 A.3d 152.  We may affirm the trial court's evidentiary ruling for a reason different than that given by the trial court.  *State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164.

[¶10]  The trial court overruled Pelletier's hearsay objection on the ground that the victim's statements fell within the exception to the rule against hearsay for present sense impressions.  *See* M.R. Evid. 803(1).  In their briefs, Pelletier and the State argue only whether that exception, or some other hearsay exception, applies to the friend's testimony.  There is no need, though, to address the applicability of any hearsay exception because the victim's statements are not hearsay.

[¶11]  Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement.  M.R. Evid. 801(c); *Needham v. Needham*, 2022 ME 7, ¶ 11, 267 A.3d 1112.  If a statement is not offered for

its truth, it is not hearsay. *State v. Fahnley*, 2015 ME 82, ¶ 20, 119 A.3d 727. "The purpose for which the out-of-court statement is offered is, therefore, critical in determining its admissibility." *State v. Liberty*, 478 A.2d 1112, 1116 (Me. 1984).

[¶12] Here, the State did not offer the victim's statements, as related by the friend, for the truth of the matter asserted. Indeed, saying "no" and "nothing's happening" are not assertions; they are directives or commands. Although the statement "I have a boyfriend" is an assertion, it was not offered to prove that the victim had a boyfriend. Rather, the State offered it and the other statements as evidence that the victim conveyed to Pelletier that she did not want to engage in sexual conduct with him. The State had to prove that the victim did not acquiesce and that Pelletier was criminally negligent as to her acquiescence. In light of Pelletier's testimony denying that the victim objected, the friend's testimony as to what the victim said to Pelletier was important evidence going to the question of whether the victim acquiesced and what Pelletier's state of mind was with regard to her acquiescence. Because the friend's testimony as to the victim's statements was not offered for the truth of the matter asserted, it was not hearsay, and the trial court correctly overruled Pelletier's hearsay objection.

**B.    The trial court did not otherwise err in admitting the friend's testimony.**

[¶13]  Pelletier makes two additional arguments as to why the trial court erred when it admitted the friend's testimony.  He argues that the court should have excluded the testimony because the friend had no personal knowledge regarding what the victim said to Pelletier and because the testimony was "irrelevant and highly prejudicial."  Pelletier concedes that he did not make these objections at trial; consequently, we review for obvious error affecting substantial rights.  *State v. Thomas*, 2022 ME 27, ¶ 19, 274 A.3d 356.

[¶14]  There was no error here.  The friend testified that from her adjacent bedroom, she heard what the victim said to Pelletier.  She thus had the requisite personal knowledge.  *See* M.R. Evid. 602; *State v. Duquette*, 475 A.2d 1145, 1147 n.1 (Me. 1984) ("[I]f a witness personally hears another make a statement, he is qualified to testify under Rule 602 that such statement was made.").[5]  Pelletier's argument that the friend's testimony should have been excluded because she could not personally observe what the victim and Pelletier were doing in the living room is a nonstarter.  The friend simply

---

[5]  Even if the witness personally heard the statement, the witness may not "testify as to the contents of the out-of-court statement if such statement is offered to prove the truth of the matter asserted and falls within no exception to the hearsay rule."  *Duquette*, 475 A.2d at 1147 n.1.  Here, though, and as already explained, the victim's statements were not offered to prove the truth of the matter asserted and were thus not hearsay.

8

testified to what she heard being said in the living room. It was not necessary for her to observe what was happening for her to have personal knowledge of what she heard.[6]

[¶15] Lastly, Pelletier argues that the friend's testimony was irrelevant and unfairly prejudicial under M.R. Evid. 403. We reject these arguments. The State had to prove that the victim had not acquiesced and that Pelletier was at least criminally negligent as to whether she had acquiesced. The victim testified that she repeatedly told Pelletier to stop, while Pelletier testified that she did not object to his actions. The friend's testimony corroborating the victim's testimony was clearly relevant.

[¶16] A court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice. M.R. Evid. 403. All evidence that damages a party's case is prejudicial, but that, by itself, is not grounds for exclusion. *See State v. Allen*, 2006 ME 21, ¶ 13, 892 A.2d 456; *State v. Forbes*, 445 A.2d 8, 12 (Me. 1982). Rather, as Rule 403 makes plain, the prejudice must be "unfair." The prejudice is unfair when it "has an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an

---

[6] Pelletier seems to argue that the friend could not have heard what was said in the living room because when the victim later came into the bedroom, the friend was asleep. In light of the friend's testimony that she could hear the victim and Pelletier, the obvious inference is that the friend was not yet asleep.

emotional one." *State v. Pendleton*, 2025 ME 40, ¶ 34, 334 A.3d 752 (quotation marks omitted).

[¶17] Here, the friend simply testified as to what she heard the victim say to Pelletier. Her testimony was certainly damaging to Pelletier because it contradicted his testimony that the sexual conduct was consensual and the victim never objected. But because there was nothing unfair about it, the trial court properly admitted the testimony.[7]

The entry is:

Judgment affirmed.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Pratt & Simmons, P.A., Camden, for appellant Jesse R. Pelletier

Toff Toffolon, Asst. Dist. Atty. (orally), Ellsworth, for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2022-693
FOR CLERK REFERENCE ONLY

---

[7] Pelletier argues that it was unfair to admit the friend's testimony because her testimony was not sufficient to establish whether the statements she heard were made by the victim "during the sexual encounter or at some other point." Because there was sufficient evidence in the record to establish a temporal connection between the victim's statements as testified to by the friend and the sexual conduct, we reject this argument. *See State v. Sheppard*, 2024 ME 84, ¶ 14, 327 A.3d 1144 ("We review the court's foundational findings or implicit findings to support admissibility of evidence for clear error, and will uphold those findings unless no competent evidence supports them." (quotation marks omitted)). To the extent that Pelletier raises other issues on appeal, his arguments are without merit.